RECYCLEWORLDS CONSULTING CORP., Plaintiff-
Appellant,†

v.

WISCONSIN BELL d/b/a Ameritech Wisconsin, Ameritech
Publishing, Inc., and Ameritech Corporation,
Defendants-Respondents.

Court of Appeals

*No. 98–0752. Submitted on briefs November 11,
1998.—Decided January 28, 1999.*

(Also reported in 592 N.W.2d 637.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Frank J. Jablonski* of *Porter, Jablonski & Associates, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Mark M. Leitner* and *C. Claibourne Greene* of *Kravit, Gass, Hovel & Leitner, S.C.* of Milwaukee.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J. RecycleWorlds Consulting Corp. appeals a judgment under which it recovered $5,000 in contract damages from the defendants on account of their failure to list RecycleWorlds' telephone number in telephone directories for two successive years.[1] RecycleWorlds asserts that the trial court erred in dismissing its tort-based claims against Ameritech and in denying its claim for statutory treble damages. We conclude, however, that the trial court properly limited RecycleWorlds' recovery to compensatory dam-

---

[1] Ameritech Corporation is a holding company which owns both Wisconsin Bell Telephone Company and Ameritech Publishing. The appealed judgment was entered against all three entities, jointly and severally, and all three appear as defendants-respondents in this appeal. We will refer to the defendants-respondents collectively as Ameritech.

589

ages for Ameritech's breach of its contractual obligations. Accordingly, we affirm the judgment.

## BACKGROUND

RecycleWorlds is a consulting firm. It obtained telephone service from Ameritech beginning in 1991 and its telephone number was listed in the business section of Ameritech's telephone directories through the 1994 edition. The RecycleWorlds listing was omitted, however, from both the 1995 and 1996 Ameritech directories. RecycleWorlds sued Ameritech, alleging both breach of contract and tort claims based on negligence and recklessness.

Ameritech moved to dismiss and to limit damages to the amounts provided for in the tariffs it had filed with the Wisconsin Public Service Commission (PSC).[2] The trial court granted most of the relief Ameritech had requested but permitted RecycleWorlds to file an amended complaint "which fully addresses the

[2] Chapter 196 does not define the word "tariff," but the term is employed numerous times in that chapter. *See,· e.g.,* § 196.219(1m)(b), STATS. ("A telecommunications utility may not offer a new . . . service to the public without first filing a tariff for that offering with the [PSC]."). In *General Telephone Co. v. Auto-Owners Insurance Co.,* 140 Wis. 2d 10, 409 N.W.2d 133 (Ct. App. 1987), we described the meaning of the term as follows:

> GTE is a telecommunications utility subject to regulation under ch. 196, STATS. Section 196.01(10), STATS. It is required to file with the PSC schedules showing all rates, tolls, and charges for its services. Section 196.19(1), STATS. In addition, GTE must file with the PSC, as a part of the required rate schedules, all rules and regulations that in any manner affect its services, products, or rates. Section 196.19(2), STATS. The rate schedules, as well as the rules and regulations filed with them, are collectively referred to as tariffs.

*Id.* at 19–20, 409 N.W.2d at 137 (citation omitted).

problems highlighted in this decision." RecycleWorlds filed an amended complaint which alleged numerous tort and breach of contract claims against the several defendant entities and sought, in addition to compensatory damages, treble damages under § 196.64, STATS., and punitive damages. Ameritech moved to strike the first amended complaint and to dismiss the action. The court entered an order dismissing the amended complaint, but again permitted RecycleWorlds to re-plead "provided that only breach of contract is pleaded as a claim."

RecycleWorlds moved for reconsideration of the trial court's decision to permit only contract claims to survive, and the trial court denied this motion. The action thus proceeded on RecycleWorlds' "Second Amended Complaint," which alleged breach of contract claims but still sought statutory treble damages and punitive damages based on Ameritech's alleged "willful misconduct" and its "willful, wanton or reckless acts." During a subsequent hearing on a discovery dispute, the trial court noted that the second amended complaint appeared to violate its previous order limiting the action to one in contract, and the court directed briefing on the matter. After reviewing "the submissions on the issue, the court ordered that "[a]ll portions of the Second Amended Complaint which relate to actions other than defendant's breach of contract are hereby **STRICKEN**."

The matter was then set for a trial to the court on the breach of contract claims. On the day before trial, RecycleWorlds moved for summary judgment on its contract claims, requesting an award of $5,000 in damages. Despite the lateness of the summary judgment motion, Ameritech acceded to entry of judgment in the

amount requested by RecycleWorlds.[3] RecycleWorlds appeals the judgment, claiming that the trial court's pre-trial rulings erroneously limited its recovery to compensatory contract damages.

## ANALYSIS

*a. Standard of Review.*

All of the trial court rulings at issue in this appeal address whether RecycleWorlds had stated claims upon which relief could be granted, and some of the rulings involve the interpretation of statutes and administrative regulations. These are questions of law which we review de novo, although we benefit from the trial court's thorough analysis of the legal issues set forth in its written decisions and orders. *See State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476, 478 (Ct. App. 1998).

*b. Waiver of Right to Appeal.*

At the outset, we address Ameritech's assertion that the appeal should be dismissed because RecycleWorlds "stipulated" to entry of a judgment in its favor on the contract claims. We disagree with both Ameritech's analysis on this point and with its characterization of how the appealed judgment came to be entered. It is true, as Ameritech argues, that a party may waive the right to appeal a judgment which it "has

---

[3] The judgment also awarded RecycleWorlds costs but offset those costs against costs previously awarded to Ameritech as a sanction for RecycleWorlds' violation of a trial court order. Neither the assessment of the sanction costs nor the offset in the judgment is at issue in this appeal.

caused or induced . . . to be entered or [if it] has consented or stipulated to the entry of a judgment." *See Cascade Mountain, Inc. v. Capitol Indem. Corp.*, 212 Wis. 2d 265, 269, 569 N.W.2d 45, 47 (Ct. App. 1997), *review denied* 212 Wis. 2d 689, 569 N.W.2d 590 (1997). In *Cascade Mountain*, the appellant had stipulated to a conditional judgment that provided that, if the appellate court reversed a summary judgment dismissing certain claims, the parties would be permitted to relitigate a claim which had neither been dismissed by the trial court nor tried to finality. Our principal concern in *Cascade Mountain,* as Ameritech acknowledges, was the manipulation of the strict rules of appellate review by a party in order to convert "discretionary, interlocutory appeals into appeals as a matter of right from 'final' orders or judgments." *Id.* at 269–70, 569 N.W.2d at 47.

By contrast, RecycleWorlds here litigated its compensatory contract damages claim against Ameritech to finality, obtaining an unconditional judgment for $5,000 in compensatory damages on that claim. RecycleWorlds did not "consent" to the entry of the appealed judgment—Ameritech did. RecycleWorlds is not precluded from appealing the trial court orders which denied it the opportunity to litigate its claims for tort damages and for statutory treble damages simply because Ameritech elected not to contest the entry of the $5,000 contract damages judgment which RecycleWorlds sought. As we discuss further below, RecycleWorlds may not now claim that it should have received more than $5,000 in compensatory damages for Ameritech's breach of the telephone service contract. However, we do not interpret its principal arguments on appeal as making that claim. Rather,

RecycleWorlds claims in this appeal that it should have been permitted: (1) to try the claims it alleged on various tort theories, and (2) to prove "willful, wanton or reckless" acts on the part of Ameritech that would entitle it to recover treble damages.

■

Ameritech also argues that RecycleWorlds may not appeal a judgment "if the judgment does not include terms adverse to" RecycleWorlds, citing *Uebelacher v. Plankinton Packing Co.*, 251 Wis. 87, 89, 28 N.W.2d 311, 312 (1947). Again we disagree. The judgment in this case which finally "dispose[d] of the entire matter in litigation as to one or more of the parties" is appealable as a matter of right. *See* § 808.03(1), STATS. Although that judgment contains only an order that RecycleWorlds recover $5,000 from Ameritech on its breach of contract claims, the appeal of the final judgment "brings before [this] court all prior non-final judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action." RULE 809.10(4), STATS. If we were to dismiss this appeal on the rationale put forward by Ameritech, no claimant who prevailed on some, but not all, of its claims in the trial court could obtain review of the allegedly erroneous dismissal of any claims prior to the final judgment or order. Finally, we note that the supreme court has stated that:

> [A]cceptance of payment under a judgment for less than the amount claimed does not prevent an appeal to modify the judgment in order to increase the recovery to the full amount claimed. Where the appeal is confined to liability for the balance claimed, the appellant does not waive his right to review by accepting the partial amount provided for in the judgment appealed from.

594

*Stevens Constr. Corp. v. Draper Hall, Inc.*, 73 Wis. 2d 104, 111, 242 N.W.2d 893, 896 (1976) (citations omitted).

### c. *Dismissal of Tort Claims.*

We turn next to RecycleWorlds' claim that the trial court erred in not permitting it to pursue tort claims alleging negligent and reckless conduct on Ameritech's part. Although it resisted the notion in the trial court, RecycleWorlds now appears to accept the proposition that in order to recover damages in tort from Ameritech, it must identify a legal duty on Ameritech's part requiring it to list RecycleWorlds' telephone number in the Ameritech directories, which exists independent of the contract between the parties for telephone service. *See Madison Newspapers, Inc. v. Pinkerton's, Inc.*, 200 Wis. 2d 468, 473, 545 N.W.2d 843, 846 (Ct. App. 1996).

RecycleWorlds would first have us find such an independent duty in § 196.03(1), STATS., which requires regulated telecommunications utilities to provide "reasonably adequate service." According to RecycleWorlds, a directory listing "is a standard and necessary component of service, embedded in the utility customer's right to service." In support of this argument, RecycleWorlds points to WIS. ADMIN. CODE § PSC 160.03(2)(a)(15), which includes within the definition of "essential telecommunications service" a "directory listing with the option for non-listed and non-published service," and § PSC 165.055(1) which requires that "alphabetical telephone directories shall be made available to customers without charge." Further, RecycleWorlds points to certain statements made by the PSC in various regulatory proceedings to the effect that "[b]usiness customers are entitled to a primary white pages listing and simple listing . . . in the

yellow pages," *In re Regulation of Yellow Pages Directory Advertising*, 65 Public Serv. Comm. of Wis. Reports 381, 383 (No. 05-TV–10, Oct. 20, 1981), and that a telecommunications tariff must allow joint directory listings for spouses without additional charges, *see In re Sanasarian*, 61 Public Serv. Comm. of Wis. Reports 234, 239 (No. 05-TV–2, Dec. 23, 1976). Finally, RecycleWorlds cites case law from other jurisdictions holding that correct listings and the furnishing of alphabetical directories are key components of telecommunications service, and it reviews the history of telecommunications service to show that "since the beginning of the industry, listings in a directory have been an essential part of telephone service."

The matters cited by RecycleWorlds in support of its first claim of error, however, do not lead us to conclude that Ameritech has an "independent duty to list." The statutes, regulations and orders verify only that Ameritech must assume, as one of its contractual obligations to its telephone customers, the duty to list each customer in its alphabetical directory. An implied "duty to list" has been recognized as being a part of contracts for telephone service in Wisconsin since at least 1929:

> A telephone directory is an indispensable element of telephone service. Without such a directory, the presence of a telephone in a place of business is of negligible value. *When a telephone company contracts to furnish telephone service, it impliedly agrees to place the subscriber's name and the telephone number in its directory, when that directory is issued in due course of business. Its failure to do so constitutes a breach of contract, and it is plainly liable upon general principles for damages resulting from such breach.*

596

*Wm. H. Schwanke, Inc. v. Wisconsin Tel. Co.*, 199 Wis. 552, 558, 227 N.W. 30, 32 (1929) (emphasis added); *see also Discount Fabric House v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 603, 345 N.W.2d 417, 425 (1984) (citing quoted passage with approval).[4]

█

We thus conclude that the statutes, regulations and PSC orders cited by RecycleWorlds dictate contractual terms between a regulated telecommunications utility and its customers, and do not create any duties independent of the telephone service contract. As we said in *Pinkerton's:*

> It is undisputed that Pinkerton's relationship with MNI was wholly the result of its contract to provide security services to the MNI building. Indeed, the only reason Pinkerton's employees were on MNI's property in the first place was because of the contract, and whatever tasks and obligations Pinkerton's undertook in this regard originated not in some independently existing common-law duty but in the terms and conditions of the document.

*Pinkerton's, Inc.*, 200 Wis. 2d at 475, 545 N.W.2d at 846. We agree with Ameritech that adopting RecycleWorlds' position on this issue would imply that a third party may sue Ameritech for damages on account of its failure to include RecycleWorlds' tele-

---

[4] Ameritech does not dispute on appeal that it assumed a contractual duty to list RecycleWorlds in its alphabetical directory as part of its contract to provide RecycleWorlds with basic telephone service. The tariff it filed which governs the service in question acknowledges that "[o]ne listing without charge, termed the primary listing, is provided for each main telephone service call number associated with single lines and Business Trunks."

phone number in its directory. We are unwilling to foster such a result. But for its agreement to provide telephone service to RecycleWorlds, Ameritech was under no duty to list RecycleWorlds in its directory.

### d. *Treble Damages under § 196.64(1),* STATS.

RecycleWorlds next asserts that, even if it must pursue Ameritech's failure to include its telephone number in the directory as purely a contractual matter, treble damages are still available to it under § 196.64(1), STATS. The statute reads as follows, in relevant part:

> If a director, officer, employe or agent of a public utility, in the course of the discharge of his or her duties, wilfully, wantonly or recklessly does, causes or permits to be done any matter, act or thing prohibited or declared to be unlawful under this chapter or ch. 197, or wilfully, wantonly or recklessly fails to do any act, matter or thing required to be done under this chapter, the public utility shall be liable to the person injured thereby in treble the amount of damages sustained in consequence of the violation.

Although RecycleWorlds does not repeat them in its argument on this point, it apparently contends that § 196.03(1), STATS. (requiring a utility to provide "reasonably adequate service"), together with WIS. ADMIN. CODE §§ PSC 160.03(2)(a)15 (defining "essential telecommunications services" to include a directory listing) and PSC 165.055(1) (providing that "alphabetical telephone directories shall be made available to customers without charge"), render the inclusion of a service customer's telephone number in Ameritech's alphabetical directory an "act . . . required to be done under" ch. 196.

In support of its argument that treble damages for Ameritech's allegedly willful, wanton or reckless breach of contract are available under § 196.64, STATS., RecycleWorlds cites *Beacon Bowl, Inc. v. Wisconsin Electric Power Co.*, 176 Wis. 2d 740, 501 N.W.2d 788 (1993). RecycleWorlds' reliance on *Beacon Bowl* is misplaced. There, the supreme court did not declare that a claim based on the violation of PSC rules "is distinct from a common law negligence claim" as RecycleWorlds asserts. Rather, the court concluded that such a violation is "negligence *per se,*" and that a verdict question encompassing rule violations could thus be submitted independently of questions involving negligence on the part of the utility. *See id.* at 767, 501 N.W.2d at 798–99. We agree with Ameritech that § 196.64, STATS., does not establish a cause of action separate from one sounding in negligence. *See Kania v. Chicago & North Western Ry. Co.*, 57 Wis. 2d 761, 761–62, 204 N.W.2d 681, 681 (1973).

RecycleWorlds also argues, however, that treble damages under the statute can be obtained in contract actions as well as those alleging negligence. RecycleWorlds asserts that *Peissig v. Wisconsin Gas Co.*, 155 Wis. 2d 686, 699, 456 N.W.2d 348, 353 (1990), supports this view, because the supreme court there declared the purpose of permitting the award of treble damages under § 196.64, STATS., is "to provide incentives to comply with the rules and deter dangerous violations." RecycleWorlds does not explain, however, how the omission of a consulting business's telephone number from a directory may constitute a "dangerous violation" of PSC rules, nor does it comment on the supreme court's conclusion in *Peissig* that "*only actions or omissions amounting to negligence* that constitute a failure to comply with the provisions of chs. 196 or 197,

599

*warrant the imposition of treble damages." Id.* at 700, 456 N.W.2d at 354 (emphasis added).

■

Except for the bad faith breach of an insurance contract by an insurer, Wisconsin courts do not recognize a cause of action for tortious breach of contract, nor do we permit the award of "punitive damages when the underlying cause of action is a breach of contract." *See Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 280, 405 N.W.2d 759, 763 (Ct. App. 1987). RecycleWorlds provides no relevant authority or other basis upon which we might conclude that the legislature intended under § 196.64, STATS., to permit utility customers to obtain treble damages in breach of contract actions against utilities. To be sure, the legislature could have specified that enhanced compensatory damages are available to a prevailing customer in a contract dispute with a utility, as it has done for employees who successfully prosecute wage claim actions against their employers, *see* § 109.11(2), STATS., and for automobile purchasers who prevail in "lemon law" actions, *see* § 218.015(7), STATS. In the absence of statutory language expressing a similar intent, however, we are unwilling to conclude that § 196.64, STATS., alters the common law limitation on the damages a party may recover for breach of a telephone service contract.

### e.   Contract Damages Awarded to RecycleWorlds.

Finally, RecycleWorlds argues that the trial court not only deprived it of the opportunity to recover tort damages and statutory treble damages, but that the court also erred by further precluding it from establishing the full extent of its contract damages. Ameritech responds that the trial court never ruled on whether

RecycleWorlds was limited by the filed tariff in the amount of damages it could recover, and that RecycleWorlds misinterpreted the trial court's orders and voluntarily sought only the damages it ultimately recovered in the appealed judgment. We agree.

An understanding of this issue requires a review of several provisions of the tariff filed by Ameritech, which both parties acknowledge has some relevance to RecycleWorlds' contract claim. We have already noted that the tariff requires Ameritech to provide "[o]ne listing without charge . . . for each main telephone service call number" for its business customers. The tariff also provides the following:

> The Company's liability for the impairment of the Customer's service arising from error in or omissions of directory listings shall be limited to an abatement or refund of an amount not exceeding the monthly charges for Exchanges Services, excluding Additional Local Message charges, during the period covered by the directory in which the error or omission occurs.

Finally, another section of the tariff provides that "[t]he Company's liability, if any, for its willful misconduct is not limited by this tariff."

In its order of October 17, 1997, the trial court noted these tariff provisions, but did not specifically comment upon their interrelationship or their applicability to the present facts. The court restated its conclusions that RecycleWorlds could not proceed on a tort theory and that treble damages under § 196.64, STATS., were not available to RecycleWorlds on its contract claim. The trial court specifically declared that RecycleWorlds "may not plead a claim arising in tort and that [its] claim is exclusively a contract action." It

601

therefore ordered that "[a]ll portions of the Second Amended Complaint which relate to actions other than defendant's breach of contract are hereby **STRICKEN**." RecycleWorlds moved for an order "specifying the allegations, causes of actions and prayers for relief that are not to be litigated in this case" under the court's October 17th order. The court denied the motion because "the record in this case clearly, consistently, and repeatedly establishes that Plaintiff's action is limited to one in contract and that any claims related to willful, wanton or reckless conduct cannot be included in this action."

The parties next appeared before the trial court on February 5, 1998, regarding a discovery dispute. In the course of reviewing the various disputed discovery matters with the court, RecycleWorlds' counsel, in response to an assertion by Ameritech's counsel, stated "[s]o, therefore, the tariff that we were provided is not, does not reflect contract terms and then in that case we would not be confined to tariff damages." To which the court replied, "I don't know, I'm not ruling on that now . . . ." Following this hearing and immediately before the scheduled court trial, RecycleWorlds filed its motion for summary judgment, which requested an order "awarding RecycleWorlds the sum of $5,000 as damages for breaches of contract to list RecycleWorlds in [Ameritech's] 1995–96 and 1996–97 PagesPlus telephone directories of the Madison, Wisconsin area." The motion does not itemize the damages sought, nor does it specify how the amount sought was calculated.[5]

---

[5] RecycleWorlds submitted an affidavit in support of its motion which attached correspondence it had received from Ameritech in February 1995, proposing a credit against RecycleWorlds' account in the amount of $2,500. The amount was apparently tendered in response to RecycleWorlds' com-

Although we have concluded that RecycleWorlds did not waive its right to appeal the trial court's dismissal of its tort claims and its claim for treble damages under § 196.64, STATS., we agree with Ameritech that, by seeking and obtaining the judgment it did on the contract claim, RecycleWorlds waived any claim of error regarding alleged trial court limitations on the amount of contract damages it could recover. Our review of the record, summarized above, indicates that the trial court never ruled that the damages RecycleWorlds could seek on a contract theory at trial were limited to the monthly charges it paid for basic telephone services during the period covered by the directories in question, as specified in one provision of the Ameritech tariff. The amount RecycleWorlds recovered on its contract claim was the amount it requested in its summary judgment motion. If RecycleWorlds believed it was entitled to more than $5,000 on a contract theory, either under the tariff or in spite of it, it should have pursued the larger claim at trial.

## CONCLUSION

For the reasons discussed above, we conclude the trial court did not err in dismissing RecycleWorlds' tort claims and its claim for treble damages under § 196.64, STATS., and that RecycleWorlds waived any claim of error regarding the amount it could recover as contract damages from Ameritech. We therefore affirm the appealed judgment.

---

plaint regarding the failure to list its telephone number in the 1995–96 directory. It appears from the record that RecycleWorlds received the tendered $2,500 credit in addition to the $5,000 judgment entered in this action.

*By the Court.*—Judgment affirmed.